UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANGELO LAMAR GATHRITE<br><br>Plaintiff,<br><br>v.<br><br>HEATHER WILSON, ET AL.,<br><br>Defendants. | Case No.: 3:19-cv-01852-JAH-NLS<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF No. 10]** |

DeAngelo Lamar Gathrite ("Plaintiff"), a California prisoner proceeding *pro se*, filed a complaint under 42 U.S.C. § 1983 on September 26, 2019 against officials at the Richard J. Donovan Correctional Facility, Dr. Heather Wilson and Officers J. Salinas and J. Trejo (collectively, "Defendants"). ECF No.1. Plaintiff alleges that Defendants violated his First Amendment, Eighth Amendment, and Fourteenth Amendment rights. Defendants move to dismiss Plaintiff's First and Fourteenth Amendment claims for failure to state a claim. For the following reasons, this Court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED IN PART** and **DENIED IN PART**.

//

//

# I. BACKGROUND

## A. Procedural Background

Plaintiff filed his original complaint on September 26, 2019. ECF No. 1. Plaintiff was granted *in forma pauperis* ("IFP") status. ECF No. 5. On February 12, 2020, Defendants filed the instant motion to dismiss. ECF No. 10. Plaintiff filed his response on April 3, 2020 (ECF No. 12) and Defendants submitted their reply on May 6, 2020 (ECF No. 13).

## B. Factual Allegations

Plaintiff's allegations are as follows. Before the incident on March 27, 2019, Plaintiff filed several complaints through 7362 health care services request forms ("7362 forms") against Defendant Wilson, his clinician at the time, and requested a new clinician. ECF No. 1 at 4. In particular, Plaintiff complained that Defendant Wilson would constantly tell other inmates and staff about Plaintiff's mental health issues and family medical history, flirt with him, and permit other inappropriate behavior. *Id.* Plaintiff reported these concerns to Dr. Sarah Beyer, Defendant Wilson's supervisor, but Dr. Beyer responded that they did not do clinician's changes and he needed to "work it out." *Id.*

On March 27, 2019, Defendant Trejo handcuffed Plaintiff behind his back and placed him in a shower which strongly smelled of urine and feces. *Id.* When Plaintiff asked why he was being placed in the shower, Defendant Trejo responded "[y]ou pissed off Dr. Wilson with all these 7362 (sick call slips) to her supervisor […], so she (Dr. Wilson) called my Sergeant ([Defendant]Salinas) and he ordered me to put you in handcuffs behind your back [and] put you in the shower until your clinician […] comes and tells us to let you go." *Id.* Plaintiff was told he was in a "clinician's time out." *Id.* at 3. Plaintiff stood in the shower for four hours and eighteen minutes. *Id.* During this time, he yelled, cried, and begged other inmates and staff to have the nurse or the Sergeant unhandcuff him because he felt "unbearable" pain" and his shoulders were going numb. *Id.* He was ignored by "everyone," because during "clinician's time out,"

no one is allowed to associate with the inmate, until their clinician releases them. *Id.* Defendant Wilson never came and ultimately Defendant Trejo released him. *Id.*

On April 4, 2019, Plaintiff was taken to Defendant Wilson's office. *Id.* at 5. She stated that she read Plaintiff's complaint and called him an exaggerator and a manipulator. *Id.* She told him his shoulder did not look hurt and since he knew how to advocate for himself, she would be kicking him out of the enhanced outpatient program. *Id.* On May 13, 2019, the mental health staff terminated Plaintiff's mental healthcare and activities. *Id.*

From these facts Plaintiff alleges several claims: 1) a violation of the Eighth Amendment's prohibition on Cruel and Unusual Punishment due to his confinement in the shower, 2) a violation of his First Amendment Freedom of Association right due to the deprivation of his ability to associate with other inmates during his confinement, 3) a violation of the Fourteenth Amendment Due Process Clause because he was confined without adequate process, and 4) a violation of the First Amendment prohibition on Retaliation by confining him because of his complaints against Defendant Wilson.[1] ECF No. 1.

## II.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim tests the legal sufficiency of a plaintiff's claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering the motion, the court must accept as true all well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 556 U.S. 544, 555 (2007). The court need not accept as true legal conclusions cast as factual

---

[1] Plaintiff's original complaint contains three counts where he merges several of the aforementioned claims together. For example, his second count lists the following civil rights violations "Eight Amendment, First Amendment, Cruel and Unusual Punishment, Due Process and Freedom of Association, etc." ECF No.1 at 4. For the purposes of clarity, the Court restructures these counts into four distinct claims.

allegations. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient).

A complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, a complaint must include non-conclusory factual content. *Id.* at 555; *Iqbal*, 556 U.S. at 679. The facts and the reasonable inferences drawn from those facts must show a plausible—not just a possible—claim for relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 557 U.S. at 679; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The focus is on the complaint, as opposed to any new facts alleged in, for example, the opposition to a defendant's motion to dismiss. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), *reversed and remanded on other grounds as stated in* 345 F.3d 716 (9th Cir. 2003). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 557 U.S. at 679. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss*, 572 F.3d at 969.

In addition, factual allegations asserted by *pro se* petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Thus, where a plaintiff appears *pro se* in a civil rights case, the court "must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988).

### III.   DISCUSSION

Defendants move to dismiss Plaintiff's claims for freedom of association, due process violation, and retaliation. ECF No. 10. The Court will address each of these claims in turn.

//

//

### A. First Amendment Freedom of Association

The Supreme Court has interpreted Freedom of Association to encompass two types of associational rights: (1) intimate association, *i.e.*, the right to maintain private relationships free of state intrusion, and (2) expressive association, *e.g.*, "the right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. *Hansen v. Nkwocha*, No. 1:15-CV-01665 DLB, 2016 WL 2898507, at *2 (E.D. Cal. May 17, 2016) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984)). Freedom of association is among the rights least compatible with incarceration. *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). Thus, some curtailment of the freedom of association must be expected in the prison context. *Id.*

Here, Plaintiff alleges that his freedom of association was violated because he was deprived of the ability to associate with his fellow inmates during his confinement in the shower. However, Plaintiff has failed to show how his confinement impeded either his ability to maintain intimate relationships, or his ability to associate for the purposes of engaging in expressive conduct. Plaintiff, at most, asserts that his right to generally associate with other inmates had been infringed,[2] but Plaintiff does not retain a right to generally converse with other inmates. *See City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) ("[W]e do not think the Constitution recognizes a generalized right of 'social association' that includes chance encounters in dance halls."). Indeed, other courts have refused to acknowledge a general right to converse or associate with other inmates. *Hansen*, 2016 WL 2898507, at *2 (dismissing an inmate's freedom of association claim based on an officer instructing the plaintiff not to talk to another inmate during an activity); *Gales v. Bryson*, No. 5:15-CV-65, 2017 WL 912126, at *3 (S.D. Ga. Feb. 3, 2017), *report and recommendation adopted*, No. 5:15-CV-65, 2017 WL 902883 (S.D.

---

[2] Plaintiff specifically alleges that his right to "associate within my minimal civilized measures of life's necessities" had been infringed. ECF No. 1 at 4.

Ga. Mar. 7, 2017) (collecting cases).  To recognize a general right for Plaintiff to associate with whomever he chooses runs counter to the purpose of prison—confinement. *See Overton*, 539 U.S. at 131 ("An inmate does not retain rights inconsistent with proper incarceration.").

Accordingly, Plaintiff's freedom of association claim fails because he has not implicated a recognized associational right.  *El-Shaddai v. Stainer*, No. CV 14-9313 GHK(JC), 2016 WL 7261230, at *26 (C.D. Cal. Dec. 13, 2016), *judgment entered*, No. CV 14-9313 GHK(JC), 2016 WL 7327768 (C.D. Cal. Dec. 13, 2016), *and aff'd sub nom*. *Wilkerson v. Stainer*, 704 F. App'x 689 (9th Cir. 2017) (holding that Plaintiff did not state a viable claim for violation of his limited constitutional right to association because he failed to demonstrate how his "intimate" or "expressive" associational rights were implicated); *Torres v. Snyder*, No. 1:08CV00428AWIGSAPC, 2008 WL 4367571, at *2 (E.D. Cal. Sept. 23, 2008) (holding that plaintiff's freedom of association claim failed as a matter of law, where he failed to provide factual support as to how his intimate or expressive associational rights were curtailed).

It is **RECOMMENDED** that Plaintiff's First Amendment Freedom of Association claim be **DISMISSED WITH LEAVE TO AMEND**.

**B.**     **Fourteenth Amendment Due Process**

To state a procedural due process claim, a plaintiff must generally allege 1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process.  *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

In order to invoke the protection of the Due Process Clause, an inmate must first establish the existence of a liberty interest and then show that it was denied without due process.  *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  Liberty interests may arise from two sources, the Constitution itself or from state law.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Id.* at 221.  This also

applies to the context of administrative segregation. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) ("Typically, administrative segregation in and of itself does not implicate a protected liberty interest."). But State regulations may create a liberty interest in avoiding restrictive conditions of confinement if those conditions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Such conditions, however, must represent a dramatic departure from the basic conditions of a plaintiff's sentence. *Id.* at 485.

Determining whether a prison condition is "atypical and significant" requires consideration of the specific facts of each case. *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). The court considers three guideposts in determining whether conditions pose an atypical and significant hardship:

> 1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (quoting *Sandin*, 515 U.S. at 486-87).

Here, Plaintiff alleges that he was placed in a "clinician's time out," where he was handcuffed behind his back and forced to stand in a dirty shower until Defendant Wilson released him. He reports that Defendant Wilson never arrived and that he remained in the "dirty" shower for over four hours. Plaintiff described the shower as containing the strong smell of feces and urine and reported that while confined, "everyone" ignored him.

Construing the facts of Plaintiff's conditions of confinement liberally, the Court finds that Plaintiff has not pled sufficient facts to maintain this claim. First, Plaintiff has not provided facts for us to compare his conditions of confinement with the conditions imposed on other inmates in administrative segregation or protective custody. Without more, the Court is unable to properly assess the conditions of his confinement under

*Sandin*. *See Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) ("*Sandin* requires a factual comparison between conditions in general population or administrative segregation (whichever is applicable) and disciplinary segregation, examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner."); *see also Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) (finding plaintiff's allegations insufficient under *Sandin* because he did not allege that conditions were different in administrative segregation, nor did he allege the extent to which conditions were better in the general population).

Second, even assuming that such conditions did depart from what other inmates in administrative segregation experienced, weighing somewhat in Plaintiff's favor, on balance the remaining factors weigh against Plaintiff. Plaintiff's confinement was too short to be considered a "dramatic departure" from the standard conditions of confinement. *Compare Mitchell v. Beard*, No. 1:15-CV-01512-GSA-PC, 2017 WL 3782926, at *6 (E.D. Cal. Aug. 31, 2017) (placement in a cold and unsanitary management cell for an hour and a half did not amount to an atypical or significant hardship) *and Meraz v. Reppond*, No. C 08-4540 MHP (PR), 2009 WL 723841, at *2 (N.D. Cal. Mar. 18, 2009) (placement in a contraband watch cell for 3 days did not constitute an atypical and significant hardship) *with Wilkinson*, 545 U.S. at 223–25, (2005) (indefinite placement in "supermax" facility, where human contact was severely limited and inmates were not eligible for parole consideration, imposed an atypical and significant hardship) *and Reyes v. Horel*, No. C 08-4561 RMW, 2012 WL 762043, at *5 (N.D. Cal. Mar. 7, 2012) (placement in a secured housing unit for nearly 11 years imposed an atypical and significant hardship). Moreover, Plaintiff makes no indication that his placement in administrative segregation impacted the length of his sentence.

Taking these factors together, Plaintiff's temporary confinement, although uncomfortable, did not amount to an atypical or significant hardship under the meaning of *Sandin*. Indeed, other courts have consistently refused to find atypical and significant hardships even under more onerous circumstances. *See, e.g.*, *Manzanillo v. Moulton*, No.

13-CV-02174-JST (PR), 2014 WL 4793780, at *12 (N.D. Cal. Sept. 25, 2014) (finding that a thirty-five day confinement in a psychiatric services unit where other inmates threw feces and urine at each other, and constantly yelled and banged on the doors was not an atypical and significant hardship); *Treglia v. Cate*, No. C 10-0757 LHK PR, 2012 WL 987295, at *8 (N.D. Cal. Mar. 22, 2012) (finding that a three day confinement in contraband surveillance watch, where Plaintiff was placed in continual restraints and did not have running water and a toilet did not amount to an atypical and significant hardship); *Smith v. Copeland*, 87 F.3d 265, 268–69 (8th Cir.1996) (rejecting Eighth Amendment and Due Process claims and holding that pretrial detainee's allegations of having to endure the "stench" of "feces and urine" from an overflowed toilet for four days "do not rise to a level of constitutional significance."); *Washington v. O'Dell*, No. 3:17-CV-1615-MMA-PCL, 2018 WL 1942372, at *2, 8 (S.D. Cal. Apr. 25, 2018) (holding that even if Plaintiff's confinement could be considered administrative segregation, he had failed to plead facts demonstrating atypical and significant hardship where he was placed in a cell which smelled of feces and urine and which was next to a mentally ill inmate who talked to himself, sang aloud, and threatened Plaintiff with harm several times).

Accordingly, it is **RECOMMENDED** that Plaintiff's Due Process claim be **DISMISSED WITH LEAVE TO AMEND**.

C.  **First Amendment Retaliation**

In the prison context, an inmate must establish five basic elements to make a viable First Amendment retaliation claim: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

For a retaliation claim to prevail, a plaintiff must demonstrate, among other things, that they engaged in protected conduct. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th

Cir. 2012). It is well established precedent that filing grievances or commencing a lawsuit is considered protected conduct under the First Amendment. See *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017).

Here, Defendants cites to *Bell v Hill*, No. CIV S-10-0850-CMK-P, 2011 WL 4736293 (E.D. Cal. Oct. 5, 2011) to contend that Plaintiff's complaints through 7362 forms were not protected conduct. Specifically, Defendants contend that because Plaintiff did not file a "formal" complaint, his complaints fall outside the purview of the First Amendment. The Court disagrees and finds that protected conduct under Ninth Circuit case law is not so restrictive.

In *Entler v. Gregoire*, 872 F.3d 1031 (9th Cir. 2017), the Ninth Circuit found that the plaintiff's written threat to file a civil lawsuit was protected conduct under the First Amendment. *Entler,* 872 F.3d at 1039-40. In rejecting the district court's dismissal of Plaintiff's complaint, the court wrote:

> The dichotomy that the district court drew between formal and informal grievances has no constitutional underpinning; nor does the distinction between a threat to initiate litigation and the litigation. To the contrary, "[t]he applicability of the constitutional right to redress of grievances does not hinge on the label the prison places on a particular complaint," *Brodheim v. Cry*, 584 F.3d 1262, 1267 n.4 (9th Cir. 2009), and embraces threats to sue, *Jones v. Williams*, 791 F.3d 1023, 1035–36 (9th Cir. 2015).

*Id.* at 1039.

Consistent with these principles, courts in this Circuit have repeatedly found protected conduct where a plaintiff makes a verbal threat to file a suit or grievance or even request a grievance form. *See e.g. Loftis v. Montes*, No. 218CV4769JFWGJS, 2020 WL 1290842, at *4 (C.D. Cal. Feb. 11, 2020), *report and recommendation adopted*, No. 218CV4769JFWGJS, 2020 WL 1289170 (C.D. Cal. Mar. 18, 2020) (finding verbal threats to speak to the Sergeant and/or threats to file a complaint protected conduct); *Smith v. Gaffney*, No. CV 18-4366-CJC (PLA), 2020 WL 2083016, at *4 (C.D. Cal. Jan.

7, 2020) (finding an inmate's request for a grievance form protected conduct); *Irvin v. Roldan*, No. CV 19-1418-AG (KK), 2019 WL 8105897, at *3 (C.D. Cal. Dec. 23, 2019) (finding threats to file a grievance protected conduct); *Garcia v. Strayhorn*, No. 13-CV-807-BEN KSC, 2014 WL 4385410, at *6 (S.D. Cal. Sept. 3, 2014) (collecting cases).

    Notably in *Hunter v. Harr*, No. CV 14-9886 R(JC), 2018 WL 6113098, at *6 (C.D. Cal. July 19, 2018), *report and recommendation adopted*, No. CV 14-9886 R(JC), 2018 WL 6118555 (C.D. Cal. Aug. 27, 2018), the court rejected an argument that an ADA appeal was not protected conduct. *Id.* at 6. In rejecting the defendants' motion for summary judgement, the court wrote that "[a]n inmate complaint need not expressly seek access to the courts or pursue civil rights litigation or *be brought through a prison's formal grievance process* for it to be considered a constitutionally protected 'grievance.'" *Id.* (emphasis added). Rather, an inmate's complaint receives First Amendment protection simply when "it brings to the attention of prison officials the inmate's concerns about problems with his conditions of confinement." *Id.* Thus "the ADA Appeal does not lose First Amendment protection, […], simply because plaintiff's complaint was not expressed in an official CDCR grievance form." *Id.*

    Similarly here, Plaintiff's submission of grievances through 7362 forms constitutes protected conduct. First, as mentioned above, the "form" of Plaintiff's complaints does not diminish the constitutional protection afforded to them. Certainly, if verbal threats to sue, verbal requests for grievance forms, and written letters outside the official grievance process constitute protected conduct, then Plaintiff's multiple written complaints in the form of 7362 forms must also be protected conduct. *See also Swanigan v. Bailey*, No. CV-11-5073-EFS, 2012 WL 5449615, at *4 (E.D. Wash. Nov. 7, 2012) (finding that plaintiff's informal complaint in the form of a letter is protected conduct).

    Second, viewing the substance of Plaintiff's complaints, Plaintiff clearly intended to raise concerns about his conditions of confinement, specifically his medical treatment. *See Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005) ("Prisoners' grievances, unless frivolous . . . , concerning the conditions in which they are being

1 | confined are deemed petitions for redress of grievances and thus are protected by the First
2 | Amendment."); *cf. Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (holding that prison
3 | officials must provide humane conditions of confinement including adequate medical
4 | care). Plaintiff's complaints voiced concerns over Defendant Wilson's alleged
5 | unprofessional conduct, which made him feel uncomfortable and impeded his ability to
6 | engage in effective medical treatment. Moreover, these complaints were brought to the
7 | attention of Defendant Wilson and her supervisor and were understood as complaints or
8 | grievances. Had these grievances been orally communicated or submitted in the form of
9 | a letter, there is no question that Plaintiff's conduct would be constitutionally protected.
10 | *See Rojas v. Brown*, No. 117CV01514DADJLT, 2019 WL 1220768, at *2 (E.D. Cal.
11 | Mar. 15, 2019) (finding verbal complaints about harassing behavior protected conduct);
12 | *Swanigan*, 2012 WL 5449615, at *4 (finding that plaintiff's informal complaint in the
13 | form of a letter complaining about inappropriate racial comments constituted protected
14 | conduct); *see also Garcia*, 2014 WL 4385410, at *6-7. ("[A] number of courts have
15 | concluded that verbal statements made by an inmate that essentially constitute a
16 | grievance […] are protected by the First Amendment."). To hold otherwise would be to
17 | elevate form over substance. *See Entler*, 872 F.3d at 1039 ("[T]he form of the
18 | complaints—even if verbal, let alone, as here, written—is of no constitutional
19 | significance.").

20 | Since Defendants have only challenged Plaintiff's retaliation claim on the grounds
21 | that his submission of 7362 forms were not protected conduct, the Court declines to
22 | review the remaining elements. The moving party has the responsibility of raising
23 | arguments before the court. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir.
24 | 2007) ( "The defendant has the burden of showing that the plaintiff has failed to state a
25 | claim for relief."); *See also Retamco Operating, Inc. v. Carone*, No. CV 04-2997 CBM
26 | (RZX), 2004 WL 7338703, at *3 (C.D. Cal. Aug. 27, 2004)" ("The party moving for
27 | dismissal has the burden of proving that no claim has been stated.") (quoting *Kehr*
28 | *Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); s*ee Horton v.*

*Zavaras*, No. 09-CV-02220-REB-KMT, 2010 WL 3341259, at *12 (D. Colo. June 11, 2010), *report and recommendation adopted*, No. 09-CV-02220-REB-KMT, 2010 WL 3341280 (D. Colo. Aug. 24, 2010) (dismissing defendant's motion to dismiss despite allegations appearing to be arguably conclusory, because defendants had not raised the issue in their briefs).

It is **RECOMMENDED** Defendants' motion to dismiss Plaintiff's retaliation claim be **Denied**.

## IV.   CONCLUSION

As outlined herein, the undersigned recommends Defendants' motion to dismiss be **GRANTED IN PART** and **DENIED IN PART** as follows:

a) Plaintiff's First Amendment Freedom of Association claim be **DISMISSED WITH LEAVE TO AMEND**.

b) Plaintiff's Fourteenth Amendment due process claim be **DISMISSED WITH LEAVE TO AMEND**.

c) Plaintiff's First Amendment Retaliation claim be **PERMITTED** to proceed against the Defendants.

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **August 12, 2020**, any party to this action may file written objections and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections must be filed and served on all parties no later than **August 26, 2020.**

//
//
//
//
//

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: July 22, 2020

Hon. Nita L. Stormes
United States Magistrate Judge