UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANGELO LAMAR GATHRITE<br><br>Plaintiff,<br><br>v.<br><br>HEATHER WILSON, ET AL.,<br><br>Defendants. | Case No.: 3:19-cv-01852-JAH-NLS<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF No. 24]** |

DeAngelo Lamar Gathrite ("Plaintiff"), a California prisoner proceeding *pro se*, filed an amended complaint under 42 U.S.C. § 1983 on October 22, 2020 against officials at the Richard J. Donovan Correctional Facility, Dr. Heather Wilson and Officers J. Salinas and J. Trejo (collectively, "Defendants"). ECF No.18. Plaintiff alleges that Defendants violated his First Amendment, Eighth Amendment, and Fourteenth Amendment rights. Defendants move to dismiss Plaintiff's First and Fourteenth Amendment claims for failure to state a claim. For the following reasons, this Court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED IN PART AND DENIED IN PART**.

//

# I. BACKGROUND

## A. Procedural Background

Plaintiff filed his original complaint on September 26, 2019. ECF No. 1. Plaintiff was granted *in forma pauperis* ("IFP") status. ECF No. 5. On February 12, 2020, Defendants filed their first motion to dismiss. ECF No. 10. This motion to dismiss was granted in part and denied in part, with leave to amend both dismissed claims. ECF No. 17. Plaintiff filed an amended complaint on October 22, 2020. ECF No. 18. Defendants filed the instant motion to dismiss on December 21, 2020. Plaintiff filed a response in opposition on January 19, 2021, and Defendants filed a reply on February 12, 2021.

## B. Factual Allegations

Plaintiff's allegations in his amended complaint are as follows. Prior to the primary incident on March 27, 2019 that will be described below, Plaintiff filed several complaints through 7362 health care services request forms ("7362 forms") against Defendant Wilson, his clinician at the time, and requested a new clinician. ECF No. 18 at 3. In particular, Plaintiff cited "inappropriate staff misconduct and unprofessionalism, and criminal misconduct" in these forms as the basis for his request. *Id.*

Plaintiff alleges that Defendant Wilson retaliated against him on March 27, 2019 for filing these complaints, and in collusion with Defendants Trejo and Salinas, placed him in a "Clinician's Timeout." *Id.* Specifically, Plaintiff alleges that Defendant Wilson requested Defendant Salinas to order Defendant Trejo to handcuff Plaintiff behind his back and place him in a shower, which he alleged strongly smelled of urine and feces, until Defendant Wilson authorized his release. *Id.* Plaintiff stood in the shower for four hours and eighteen minutes. *Id.* Defendants Wilson, Salinas, and Trejo never came back and ultimately Officer Torres released him. *Id.*

Plaintiff filed a complaint of this incident after he was released. *Id.* at 10. After reading this complaint, Plaintiff alleges that Defendant Wilson further retaliated against him by removing him from the Enhanced Outpatient Program (EOP). *Id.* This terminated Plaintiff's mental healthcare activities at the EOP level. *Id.*

Plaintiff obtained medical care for injuries resulting from the Clinician's timeout, resulting in x-rays showing "damage and personal injury to Plaintiff's right shoulder's rotator cuff and torn tendons." *Id.* at 9. Plaintiff is permanently medicated for his shoulder pain. *Id.* at 10.

From these facts Plaintiff alleges several claims: 1) a violation of the Eighth Amendment's prohibition on Cruel and Unusual Punishment due to his confinement in the shower, 2) a violation of his First Amendment Freedom of Association right due to the deprivation of his ability to associate with other inmates, mental health facilitators, medical staff, and members of his self-help groups within the prison during his confinement, 3) a violation of the Fourteenth Amendment Due Process Clause because he was confined without adequate process, and 4) a violation of the First Amendment prohibition on Retaliation by confining him because of his complaints against Defendant Wilson. *Id.*

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim tests the legal sufficiency of a plaintiff's claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering the motion, the court must accept as true all well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 556 U.S. 544, 555 (2007). The court need not accept as true legal conclusions cast as factual allegations. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient).

A complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, a complaint must include non-conclusory factual content. *Id.* at 555; *Iqbal*, 556 U.S. at 679. The facts and the reasonable inferences drawn from those facts must show a plausible—not just a possible—claim for relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 557 U.S. at 679; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The focus is on the complaint, as opposed to any new facts alleged in, for example, the opposition to a defendant's motion

to dismiss. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), *reversed and remanded on other grounds as stated in* 345 F.3d 716 (9th Cir. 2003). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 557 U.S. at 679. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss*, 572 F.3d at 969.

In addition, factual allegations asserted by *pro se* petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Thus, where a plaintiff appears *pro se* in a civil rights case, the court "must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988).

### III. DISCUSSION

Defendants move to dismiss Plaintiff's claims for freedom of association, due process violation, and retaliation. ECF No. 10. The Court will address each of these claims in turn.

#### A. First Amendment Freedom of Association

The Supreme Court has interpreted freedom of association to encompass two types of associational rights: (1) intimate association, *i.e.*, the right to maintain private relationships free of state intrusion, and (2) expressive association, *e.g.*, "the right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Hansen v. Nkwocha*, No. 1:15-CV-01665 DLB, 2016 WL 2898507, at *2 (E.D. Cal. May 17, 2016) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984)). Freedom of association is among the rights least compatible with incarceration. *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). Thus, some curtailment of the freedom of association must be expected in the prison context. *Id.*

Here, Plaintiff alleges that his freedom of association was violated when he was placed in the "Clinician's Timeout" for four hours and eighteen minutes because he was deprived of his ability to intimately associate with mental health group facilitators, medical staff, and self-help groups that provide good time credits off his prison sentence. ECF No. 18 at 3. Plaintiff also claims the right to expressive association with dayroom activities, phone calls, and other "necessities". ECF No. 18 at 3.

As discussed in the previous motion to dismiss, Plaintiff does not retain a right to generally converse with other inmates. *See City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) ("[W]e do not think the Constitution recognizes a generalized right of 'social association' that includes chance encounters in dance halls."); *see also Hansen*, 2016 WL 2898507, at *2 (dismissing an inmate's freedom of association claim based on an officer instructing the plaintiff not to talk to another inmate during an activity). Plaintiff has not cited to any case that suggests a right to associate with self-help groups that consist of other inmates attempting to earn time credits on their sentences. This also applies to prison activities such as dayroom activities and phone calls. Plaintiff has not provided support as to why there is an expressive right to association for these activities.

In addition, association is only protected if it is done for the purpose of engaging in a protected activity such as "speech, assembly, petition for the redress of grievances, and the exercise of religion." *Hansen*, 2016 WL 2898507, at *2. Plaintiff has not explained how his association with medical staff and other health groups or his dayroom activities and phone calls implicate any of these protected activities. Plaintiff has only provided a conclusory statement that these activities are protected by the First Amendment. As mentioned above, this is insufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient).

Furthermore, to recognize a general right for Plaintiff to associate with whomever he chooses runs counter to the purpose of prison—confinement. *See Overton*, 539 U.S. at 131 ("An inmate does not retain rights inconsistent with proper incarceration."). Courts

have found that inmates do not have the freedom to associate with a variety of other groups besides the general inmate population. *See Dunn v. Castro,* 621 F.3d 1196, 1205 (9th Cir. 2010) (holding that "the right of a prisoner to receive visits from his children in the factual circumstances of this case was not clearly established"); *see also Cortez v. Cate*, 499 Fed.Appx. 658, 559-60 (9th Cir. 2012) (holding that an inmate did not have a right to "'benign association' with people of his own ethnic group without being subjected to a risk of SHU confinement" after being validated as a gang member); *see also Knox v. Biter*, 2018 WL 6573225 (E.D. Cal. 2018) (adopting the recommendation in *Knox v Biter*, 2018 WL 4039971 (E.D. Cal. 2018), holding that Plaintiff did not have a right to contact visitation with minors).

Here, Plaintiff has not provided support to find a general right to associate with mental health facilitators and medical staff in the prison setting at his choosing. Plaintiff does have a right to adequate medical care during his imprisonment, but this issue has been pled in Plaintiff's Eighth Amendment claim and is more appropriate for that claim. Plaintiff has not provided facts to suggest that the right to medical care coincides with the freedom of association.

Accordingly, Plaintiff's freedom of association claim fails because he has not implicated a recognized associational right. *El-Shaddai v. Stainer*, No. CV 14-9313 GHK(JC), 2016 WL 7261230, at *26 (C.D. Cal. Dec. 13, 2016), *judgment entered*, No. CV 14-9313 GHK(JC), 2016 WL 7327768 (C.D. Cal. Dec. 13, 2016), *and aff'd sub nom. Wilkerson v. Stainer*, 704 F. App'x 689 (9th Cir. 2017) (holding that Plaintiff did not state a viable claim for violation of his limited constitutional right to association because he failed to demonstrate how his "intimate" or "expressive" associational rights were implicated); *Torres v. Snyder*, No. 1:08CV00428AWIGSAPC, 2008 WL 4367571, at *2 (E.D. Cal. Sept. 23, 2008) (holding that plaintiff's freedom of association claim failed as a matter of law, where he failed to provide factual support as to how his intimate or expressive associational rights were curtailed).

It is **RECOMMENDED** that Plaintiff's First Amendment Freedom of Association claim be **DISMISSED WITH LEAVE TO AMEND**.

### B. Fourteenth Amendment Due Process

To state a procedural due process claim, a plaintiff must generally allege 1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process. *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

In order to invoke the protection of the Due Process Clause, an inmate must first establish the existence of a liberty interest and then show that it was denied without due process. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Liberty interests may arise from two sources, the Constitution itself or from state law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Id.* at 221. This also applies to the context of administrative segregation. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) ("Typically, administrative segregation in and of itself does not implicate a protected liberty interest."). But State regulations may create a liberty interest in avoiding restrictive conditions of confinement if those conditions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Such conditions, however, must represent a dramatic departure from the basic conditions of a plaintiff's sentence. *Id.* at 485.

Determining whether a prison condition is "atypical and significant" requires consideration of the specific facts of each case. *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). The court considers three guideposts in determining whether conditions pose an atypical and significant hardship:

> 1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (quoting *Sandin*, 515 U.S. at 486-87).

In Plaintiff's Amended Complaint, he alleges that he is a participant in the Enhanced Outpatient Program (EOP) and the conditions in that program include "access to medical, mental health, and custody staff at all times" and access to "watch TV, attend groups, yard, dayroom activities, phone calls, showers, gym access, self-help groups," among other activities. ECF No. 18 at 9. In comparison to disciplinary segregation, Plaintiff does note that "it is rare to see patients in restraints/handcuffs – unless that person poses a threat to self, others, staff, or the safety of the institution", whereas members in disciplinary segregation are "in restraints/handcuffs on all escorts and contained to their cells." *Id*. As a result, Plaintiff does provide some comparisons between the two types of prison population as required under *Sandin*.[1] *See Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) ("*Sandin* requires a factual comparison between conditions in general population or administrative segregation (whichever is applicable) and disciplinary segregation, examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner."). However, it is not necessary to determine whether these facts sufficiently depart from the experience in disciplinary segregation. Even assuming that these conditions meet the first factor, on balance the remaining factors still weigh against the plaintiff.

---

[1] Plaintiff does not provide facts to allege the difference between the general population and disciplinary segregation, and instead focuses on the EOP program. It is unclear whether the necessary comparison is between the EOP program and disciplinary segregation or between the general population and disciplinary segregation. The court avoided making that distinction in *Jackson*. In *Jackson*, the inmate was in administrative segregation, but provided facts for both types of comparisons and "'cover[ed] his bases' regardless of which comparison the court makes—general population v. Corcoran–SHU or administrative segregation v. Corcoran–SHU." *Jackson*, 353 F.3d at 756. If the necessary comparison involves the general population, this factor weighs against Plaintiff since he did not provide any facts to make the appropriate comparison. However, regardless of which comparison is needed, the issue is not dispositive because the other factors still weigh against Plaintiff, as discussed below.

8

As discussed in the previous report and recommendation on Defendant's first motion to dismiss, Plaintiff's confinement was too short to be considered a "dramatic departure" from the standard conditions of confinement. *Compare Mitchell v. Beard*, No. 1:15-CV-01512-GSA-PC, 2017 WL 3782926, at *6 (E.D. Cal. Aug. 31, 2017) (placement in a cold and unsanitary management cell for an hour and a half did not amount to an atypical or significant hardship) *and Meraz v. Reppond*, No. C 08-4540 MHP (PR), 2009 WL 723841, at *2 (N.D. Cal. Mar. 18, 2009) (placement in a contraband watch cell for 3 days did not constitute an atypical and significant hardship) *with Wilkinson*, 545 U.S. at 223–25, (2005) (indefinite placement in "supermax" facility, where human contact was severely limited and inmates were not eligible for parole consideration, imposed an atypical and significant hardship) *and Reyes v. Horel*, No. C 08-4561 RMW, 2012 WL 762043, at *5 (N.D. Cal. Mar. 7, 2012) (placement in a secured housing unit for nearly 11 years imposed an atypical and significant hardship). It is clear from Plaintiff's allegations that this confinement lasted only four hours and eighteen minutes, which falls far below the length of time of other confinement situations that did not impose an atypical and significant hardship. Therefore, the second factor of *Sandin* weighs against the Plaintiff. Finally, Plaintiff still makes no substantive indication that his placement in administrative segregation impacted the length of his sentence. Therefore, the third factor of *Sandin* also weighs against the Plaintiff.

Taking these factors together, Plaintiff's temporary confinement, although uncomfortable, did not amount to an atypical or significant hardship under the meaning of *Sandin*. As mentioned previously, other courts have consistently refused to find atypical and significant hardships even under more onerous circumstances, including this court. *See, e.g.*, *Washington v. O'Dell*, No. 3:17-CV-1615-MMA-PCL, 2018 WL 1942372, at *2, 8 (S.D. Cal. Apr. 25, 2018) (holding that even if Plaintiff's confinement could be considered administrative segregation, he had failed to plead facts demonstrating atypical and significant hardship where he was placed in a cell which smelled of feces and urine and which was next to a mentally ill inmate who talked to

9

himself, sang aloud, and threatened Plaintiff with harm several times); *see also Manzanillo v. Moulton*, No. 13-CV-02174-JST (PR), 2014 WL 4793780, at *12 (N.D. Cal. Sept. 25, 2014) (finding that a thirty-five day confinement in a psychiatric services unit where other inmates threw feces and urine at each other, and constantly yelled and banged on the doors was not an atypical and significant hardship).

Accordingly, it is **RECOMMENDED** that Plaintiff's Due Process claim be **DISMISSED WITH LEAVE TO AMEND**.

### C. First Amendment Retaliation[2]

In the prison context, an inmate must establish five basic elements to make a viable First Amendment retaliation claim: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Previously, Defendants argued that Plaintiff's complaints through 7362 forms were not protected conduct. ECF No. 10 at 7. This court determined that it is well established precedent that filing grievances or commencing a lawsuit is considered protected conduct under the First Amendment. ECF No. 14 at 9-10. *See Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017). Defendants now raise arguments as to the other elements of the retaliation claim.[3] Plaintiff asserts two separate adverse actions by Defendants that may

---

[2] Plaintiff did not create separate section in his complaint for the First Amendment Retaliation claim as he does for the rest of the claims. However, there are facts to suggest that there is a retaliation claim, as was discerned in the previous Complaint, which did not have any separate sections for each claim. As mentioned above, factual allegations asserted by *pro se* petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Thus, where a plaintiff appears *pro se* in a civil rights case, the court "must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). Furthermore, Defendants address arguments to dismiss the retaliation claim, suggesting that they concede the existence of this claim.

[3] It is unclear whether Defendants may bring new arguments in a motion to dismiss for a claim that previously survived the motion. Rule 12(g)(2) provides that "Except as provided in Rule 12(h)(2) or (3),

10

3:19-cv-01852-JAH-NLS

constitute retaliatory action. First, Plaintiff alleges that he was placed in a clinician's time out for four hours and eighteen minutes based on the 7362 Forms he filed against Defendant Wilson. ECF No. 18 at 3. Second, he alleges that he was removed from the Enhanced Outpatient Program (EOP) based on his complaints about the clinician's timeout. *Id*. at 10. Defendants now argue that elements 2 and 4 are not met in *Rhodes*.

First, Defendants Wilson, Salinas, and Trejo[4] argue that there was no chilling effect on the Plaintiff. ECF No. 24 at 10. In particular, they reference the Plaintiff's future complaints and this lawsuit. The Ninth Circuit has clearly addressed the "Catch-22" of chilled speech followed by a lawsuit. In *Rhodes v. Robinson*, the court states the following:

> "The district court's further holding that Rhodes's filing this very lawsuit somehow precludes relief on the retaliation claim he therein presents goes even further afield. Indeed, were we to adopt such a theory, prisoner civil rights plaintiffs would be stuck in an even more vicious Catch–22. The only way for an inmate to obtain relief from retaliatory conduct would be to file a federal lawsuit; yet as soon he or she does so, it would become clear that he or she cannot adequately state a claim for relief. Like its fictional counterpart, this catch exudes an 'elliptical precision about its perfect pairs of parts that [i]s both graceful and shocking.' Catch–22 at 47. Unlike Colonel Cathcart, however, we are unwilling to indulge a rule that 'would result in the anomaly of protecting only those individuals who remain out of court.'

---

a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." *See In re Apple iPhone Antitrust Litigation*, 846 F.3d 313, 317 (9th Cir. 2017). However, this court has previously interpreted this to allow Defendants to raise new arguments in a successive motion to dismiss. *See Mir. v. Kirchmeyer*, 2014 WL 12029269 at *4 (S.D. Cal. 2014) ("Courts within this Circuit therefore have permitted defendants to bring motions to dismiss in response to an amended pleading based on arguments previously made in a prior motion to dismiss and to raise new arguments that were not previously made"); *see also In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV Television Litig*., 758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010) ("When Plaintiffs filed the [First Amended Consolidated Complaint], it superseded their previous complaint, and Sony was therefore free to move again for dismissal."). In order to provide a complete Report and Recommendation, the Defendants' arguments will be addressed on its merits.

[4] Defendants Salinas and Trejo sometimes use "Defendants" to refer to themselves without Defendant Wilson, so it is unclear whether Defendant Wilson is meant to be a part of these arguments. The court assumes that the Defendant Wilson is a part of both claims.

11

*Rhodes*, 408 F.3d at 568. Filing a lawsuit does not preclude an inmate from asserting that his speech was chilled because of retaliatory conduct. Furthermore, the standard for chilling speech is not complete silence; rather, the true inquiry is whether "the retaliatory actions would have chilled or silenced a person of ordinary firmness by alleging 'more than minimal' harms." *Watison*, 668 F.3d at 1115. At the pleading stage, the court has "*never* required a litigant, *per impossible*, to demonstrate a total chilling of his First Amendment rights . . . . Speech can be chilled even when not completely silenced." *Rhodes*, 408 F.3d at 568. Plaintiff has established "more than minimal harms", such as his removal from the EOP program and the Clinicians' Time Out. Therefore, he has sufficiently alleged that his speech was chilled as a result of adverse actions.

Second, Defendants now argue that "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured – the motive must cause the injury." *Nieves v. Barlett*, 139 S. Ct. 1715, 1722 (2019). Defendants argue that Plaintiff "only makes conclusory statements that provide any link between his protected activity (filing complaints) and Defendants' adverse actions." ECF No. 24 at 16.

To establish the causal link, Plaintiff must assert facts that show that Defendants had knowledge of his prior speech. *See Nieves*, 139 S.Ct. at 1727-28 ("[the] allegation about Nieves says nothing about what motivated Weight, who had no knowledge of Bartlett's prior run-in with Nieves. Cf. *Lozman*, 585 U.S., at ——, 138 S.Ct., at 1953–1954 ("plaintiff 'likely could not have maintained a retaliation claim against the arresting officer' when there was 'no showing that the officer had any knowledge of [the plaintiff's] prior speech')"). However, it is difficult to establish intent and knowledge, so "allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). In *Watison*, it was enough to show that the adverse actions occurred shortly after the protected speech and were alleged to be retaliatory. *Id*. at 1115 ("Watison also alleged . . . a connection . . . Rodriguez and Carter took these adverse actions shortly after, and '[i]n

12

retaliation' for, Watison's filing of grievances against Rodriguez"). Therefore, explicit statements are not necessary if the retaliation can be inferred from the "chronology of events." *Id*. at 1114.

Regarding Defendant Wilson, Plaintiff has pled sufficient facts to establish a causal link in both instances of retaliation. When he was allegedly placed in a "Clinician's Timeout", Plaintiff stated that he had filed "numerous complaints" against Defendant Wilson, "citing inappropriate staff misconduct and unprofessionalism and criminal misconduct." ECF No. 18 at 3. After filing these complaints, Defendant Wilson "requested defendant Sgt. Salinas to order [D]efendant Trejo to handcuff Plaintiff Gathrite behind his back, place him in the shower area until defendant Wilson say[s] 'let him go." *Id*. From this "chronology of events", retaliation can be inferred as required by *Watison*. *Watison*, 668 F.3d at 1114. Plaintiff even stated that Defendant Wilson "retaliated in a cruel and unusual action," as did the Plaintiff in *Watison*. ECF No. 18 at 3; *see* 558 F.3d at 1115. Therefore, Plaintiff has sufficiently alleged a causal link between the "Clinician's Timeout" and a retaliatory motive. Plaintiff also stated that "[a]fter filing a complaint of [the Clinician's Timeout] and reading Plaintiff['s] complaint [D]efendant Wilson retaliated again and had Plaintiff kicked out of the Enhanced Outpatient Program." ECF No. 18 at 10. Plaintiff has alleged a chronology of events: filing a complaint followed by removal from the EOP program. As mentioned in *Watison*, "allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison,* 668 F.3d at 1114. Even if Plaintiff had not explicitly mention retaliation, it can be inferred that he was removed from the EOP program because he filed a complaint. Since there is a chronology of events, Plaintiff has sufficiently alleged a causal link between the removal from the EOP program and retaliatory motive.

Defendants Salinas and Trejo argue that "there are no allegations that establish that Defendants were ever aware that Plaintiff filed complaints against Defendant Wilson or prison staff." ECF No. 24 at 10. We agree that *this* amended complaint does not provide

13

facts to establish knowledge.[5] Therefore, the requirement in *Nieves* is not met. Defendants also argue that the Plaintiff's facts establish "[t]hey were instead following a clinician's request." ECF No. 24 at 10. As discussed above, it is more important to establish knowledge of the prior speech. It is not necessary to show a specific retaliatory motive so long as the chronology of events suggests retaliation. *Watison*, 668 F.3d at 1114. Because Plaintiff must allege facts to suggest the Defendants Salinas and Trejo had knowledge of the prior speech and must allege a sufficient chronology that infers retaliatory action, Plaintiff's claim against Defendants Salinas and Trejo is incomplete.

Thus, for Plaintiff's retaliation claims, Plaintiff has alleged sufficient facts to support both claims against Defendant Wilson, but fails to allege a causal link for the retaliation claims against Defendants Salinas and Trejo. Accordingly, it is **RECOMMENDED** that Plaintiff's Retaliation claim against Defendants Salinas and Trejo be **DISMISSED WITH LEAVE TO AMEND** and Defendant Wilson's motion to dismiss Plaintiff's Retaliation claim be **DENIED**.

### IV. CONCLUSION

As outlined herein, the undersigned recommends Defendants' motion to dismiss be **GRANTED** as follows:

a) Plaintiff's First Amendment Freedom of Association claim be **DISMISSED WITH LEAVE TO AMEND**.

---

[5] In Plaintiff's original complaint, he alleges Defendant Trejo said "Gathrite, you're on a Clinicians' 'Time Out' for all those 7362s you keep writing, so you ain't got nothing coming until Dr. Wilson gets here. You don't like it, write her up!" This statement provides a clear allegation of knowledge, and it can be inferred that the adverse actions were taken to retaliate against Plaintiff. Unfortunately, Plaintiff does not provide this statement in the First Amended Complaint, meaning this statement cannot improve the claim's ability to survive a motion to dismiss. *See Rhodes v. Robinson,* 621 F.3d 1002, 1005 (9th Cir. 2010) ("As a general rule, when a plaintiff files an amended complaint, '[t]he amended complaint supercedes the original, the latter being treated thereafter as non-existent'" (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967))). Thus, the Court cannot consider this statement in the instant motion to dismiss.

b) Plaintiff's Fourteenth Amendment due process claim be **DISMISSED WITH LEAVE TO AMEND**.

c) Plaintiff's First Amendment Retaliation claim against Defendants Salinas and Trejo be **DISMISSED WITH LEAVE TO AMEND.**

d) Plaintiff's First Amendment Retaliation claim be **PERMITTED** to proceed against Defendant Wilson.

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **August 4, 2021**, any party to this action may file written objections and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections must be filed and served on all parties no later than **August 18, 2021.**

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: July 14, 2021

Hon. Nita L. Stormes
United States Magistrate Judge